**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:25-CR-62-1** |
| | ) | |
| **FNU LNU,** | ) | |
| **AKA RONY DENIS** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE (DOC. 213)**

The United States, by and through Margaret E. Heap, United States Attorney, and undersigned counsel, opposes the Defendant's Motion to Strike as Surplusage paragraphs 1-3 of the instant Indictment. (See Docs. 3 and 213).

**Background**

On September 4, 2025, a grand jury indicted FNU LNU aka Rony Denis (hereinafter "Denis" or "Defendant") and seven co-defendants on fraud offenses stemming from their involvement with the House of Prayer Christian Churches of America ("HOPCC") and House of Prayer Bible Seminary ("HOPBS"). (Doc. 3.) Defendant is charged in Count One with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1344(2) and 1349, in Count Four with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1343 and 1349, and in Counts Twenty-Four through Twenty-Six with Aiding or Assisting in Filing False Tax Returns, in violation of 26 U.S.C. § 7206(2). (Id.)

The alleged bank fraud scheme involved church leaders, including the Defendant, using HOPCC members as straw buyers of real property. (See id. at 7-22.) The alleged wire fraud scheme involved the recruitment of military veterans into the HOPCC and the HOPBS. (See id. at 23-27, 29.) The alleged tax scheme involved Denis underreporting his income for tax years 2018, 2019, and 2020 by more than $5.7 million. (See id. at 35-37.)

The Defendant was identified as "Pastor" for the HOPCC (See id. at 1). All the other co-defendants, save Anthony Oloans, were members of and "volunteer minister[s]" at the HOPCC. (Id. at 2-3.) Oloans was identified as the "Executive Assistant to DENIS." (Id. at 2.)

The indictment generally sets forth Denis' establishment of the HOPCC and the HOPBS in various locations. (See id. at 3-4.) The indictment also alleges that Denis and his co-defendants exercised extreme control over many HOPCC members and describes some of that control. (See id. at 4-6.)

In addition to the fraud schemes themselves, the indictment alleges that Defendant lived under a fraudulent, stolen identity since at least July 29, 1983.[1] (See id. at 1-2.) Specifically, the indictment alleges in paragraph 1-3:

[1] Though not spelled out in the indictment, the government presented evidence at the Defendant's detention hearing which showed that the real Rony Denis (DOB [redacted], Alien # [redacted], and SSN [redacted]) entered the United States in 1980 through the port of Miami. He was photographed and fingerprinted. In 1983, the Defendant enlisted in the U.S. Army as "Rony Denis (DOB [redacted], Alien # [redacted], and SSN [redacted])." Defendant was photographed and fingerprinted to enter the military. The photographs of the real Rony Denis and the Defendant are not the same person. Fingerprint comparison confirms that Rony Denis who entered the port of Miami in 1980 and was assigned Alien # [redacted], and SSN [redacted] is not the Defendant.

1. At least as early as July 29, 1983, **FNU LNU** (**FIRST NAME UNKNOWN**, **LAST NAME UNKNOWN**), stole the identity of '**RONY DENIS.'**

2. **FNU LNU aka 'RONY DENIS'** married a U.S. citizen in 1988. In 2001, using the stolen identity "**RONY DENIS**," **FNU LNU** applied for United States citizenship, which was granted in 2002.

3. Since on or about July 29, 1983, **FNU LNU** has presented himself as "**RONY DENIS**" and his true identify remains unknown. In this Indictment, he will be referred to as "**DENIS,**" as he has been known since July 29, 1983, and during the time relevant to this Indictment. (Id.)

Defendant moves to strike these paragraphs as surplusage pursuant to Fed. R. Crim. P. 7(d). The Government opposes this motion.

**Argument**

Fed. R. Crim. P. 7(d) states**: "**Upon the defendant's motion, the court may strike surplusage from the indictment or information."

> To strike surplusage, a defendant must satisfy a two-prong test. United States v. Anyanwu, No. 1:12-CR-190-TWT-ECS, 2013 WL 1558712, at *4 (N.D. Ga. Mar. 12, 2013), *report and recommendation adopted*, 2013 WL 1561011 (N.D. Ga. Apr. 12, 2013). First, the defendant must show that the language he seeks to strike is not relevant to the charges against him. See United States v. Williams, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008). Second, the defendant must show that the challenged language is unfairly prejudicial and inflammatory. Id. Because Rule 7(d) is permissive and not mandatory, the Rule "is strictly construed against striking surplusage." United States v. Delgado, 2018 WL 3029282, at *5 (M.D. Ala. Apr. 20, 2018).
>
> Indeed, "[a] motion to strike surplusage from an indictment should not be granted '*unless it is clear* that the allegations are not relevant to the charge *and* are inflammatory and prejudicial." United States v. Brye,

> 318 F. App'x 878, 880 (11th Cir. 2009) (quoting United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (emphasis added)). " 'This is a most exacting standard.' " Id. The Court may also reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial. See Awan, 966 F.2d at 1426.

United States v. Lima, No. 122CR00307MHCLTW, 2023 WL 2450174, at *1 (N.D. Ga. Jan. 19, 2023), report and recommendation adopted, No. 1:22-CR-307-MHC-LTW, 2023 WL 1816086 (N.D. Ga. Feb. 8, 2023)

"[E]ven when prejudice can be shown, the Court should not strike the information contained in the indictment if it is relevant to the charged offense. United States v. Williams, No. 07-80179-CR-HURLEYVI, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008).

In the instant case, the Defendant must show that Paragraphs 1-3 of the indictment are not relevant *and* that the allegations are unfairly prejudicial and inflammatory. He cannot show either prong of the test.

First, paragraphs 1-3 are relevant. The Defendant is indicted as FNU LNU (First Name Unknown, Last Name Unknow) aka Rony Denis. In other words, his actual identity is unknown, and his alias is "Rony Denis." The government is entitled to prove its case as charged—FNU LNU—and the jury should not be invited to speculate as to why the Defendant is indicted in that manner, particularly when the government can demonstrate when he acquired the false identity of "Rony Denis." This information is highly relevant to explaining the FNU LNU designation, and for that reason alone the motions should be denied.

There is more. Every single allegation in the indictment pertaining to the Defendant was committed using the identity of the real "Rony Denis." The jury

should not be misled to believe that the government accepts that "Rony Denis" is his name. The Defendant has lived the last 43 years of his adult life under this stolen identity. Using this stolen identity he opened bank accounts, purchased real estate, and filed tax returns. This makes the stolen identity relevant and not overly prejudicial to the charges not only in Count One, the bank fraud conspiracy, and Count Four, the wire fraud conspiracy, but also in Counts Twenty-Four through Twenty-Six, the tax charges.

At least one straw-purchase transaction outlined in the indictment involved the Defendant's purchase of a house as "Rony Denis," using the false identity. Specifically, on November 10, 2005, the Defendant purchased 707 Madison Drive, Hinesville, Georgia for $82,000. Approximately three months later, on February 1, 2006, the Defendant, with co-defendant Anthony Oloans -- acting with a Power of Attorney from the Defendant -- sold 707 Madison Drive, Hinesville, Georgia for $122,000 for a $40,000 profit. The sales contract indicated that another HOPCC member was the buyer. This purported "buyer" was unaware of the transaction, and his name had been forged on a Power of Attorney, which co-defendant David Reip used when he signed loan documents at the closing. (Doc. 3 at 14.)

For all of the above reasons, paragraphs 1-3 are highly relevant and not unfairly prejudicial or inflammatory. The government should be allowed to explain why the Defendant is named FNU LNU and how every act in the indictment relating to the Defendant was committed in a false name.

**Conclusion**

The Court should deny the motion to strike paragraphs 1-3 of the indictment.

Respectfully submitted, this 25th day of September, 2026.

MARGARET E. HEAP
UNITED STATES ATTORNEY

***/s/ Patricia Green Rhodes***
Patricia Green Rhodes
Assistant United States Attorney
Chief, Criminal Division
Georgia Bar No. 307288
P.O. Box 2017
Augusta, GA 30903
(706) 826-4534